SMITH, Judge.
This is an appeal of a final judgment in an interpleader action in which the trial court awarded the proceeds of a life insurance policy to the deceased’s widow, rather than the designated beneficiary. We affirm.
The appellee’s husband, the insured, had procured a life insurance policy for $10,000 from John L. Alden Life Insurance Company in 1980. The original beneficiary was the appellee. Sometime in the spring of 1983, the insured changed the primary beneficiary designation to name the appellant in place of his wife, and the wife was listed as the first contingent beneficiary. The change in the primary beneficiary was recorded by John Alden Insurance on June 3, 1983. The record shows that appellee was falsely listed by the insured as “former wife,” and the insured listed appellant as “fiancee.” In August 1985, the policy val *1334 ue was increased to $20,000. The record shows the premiums for the policy were paid by drafts from the joint checking account of the insured and his wife.
The evidence at trial revealed that sometime in 1976, the insured initiated an extramarital affair with the appellant which lasted until the insured died of a heart attack on June 21, 1986. Despite his relationship with the appellant, the insured continued to reside in the marital home with the appel-lee until his death.
Both parties to this appeal claimed the policy proceeds following the insured’s death. John Alden Insurance refused to pay either claim, and suit was brought against the company by both parties. John Alden Insurance interpled the $20,000 into the registry of the circuit court and was discharged from both cases, which were consolidated.
A bench trial was held, but the sitting circuit judge was unable to render a final judgment before falling ill. By stipulation of the parties, the trial proceedings were transcribed and given to a replacement judge, along With the court record which contained memoranda of law submitted by both parties. Judge Crusoe, the substitute judge, reviewed the transcript and record and heard oral argument by counsel, then ruled that the insured’s designation of the appellant as primary beneficiary was the result of undue influence exercised by the appellant. The $20,000 in proceeds, plus interest, were awarded to the appellee.
The appellant argues on appeal that the lower court apparently adopted the view, erroneously, appellant contends, that the presumption of undue influence arises automatically upon a showing of a meretricious relationship. While it is arguable, it is by no means clear from the final order that the lower court relied exclusively upon a presumption arising from the meretricious relationship. Assuming that to be the case, we find the case law cited in the following discussion fully supportive of a finding of undue influence under the circumstances present here. In any event, there is no indication that the court considered such a presumption, if one existed, as irrebuttable.[1]
Appellant contends that the presumption of undue influence arises only upon a showing of both (1) the existence of a confidential relationship between the insured and the beneficiary, and (2) the active procurement in the change of beneficiary designation by the beneficiary. Appellant argues that this two-part test, used to test the validity of a will, was held by the court in Beatty v. Strickland, 186 So. 542 (Fla.1939) to be the applicable test in cases involving the change of beneficiary of a life insurance policy from a spouse to a mistress.[2] The showing of a meretricious relationship satisfies only the first part of the test to prove the exercise of undue influence, according to the appellant.
Contrary to the argument advanced by appellant, we find that the supreme court did not explicitly propound the two-part test as above stated, although the court in Beatty did hold that the “rule of law which is applied to the matter of undue influence in the execution of wills applies in cases of this sort.” 186 So. at 544. The court went on to quote from Redfearn on Wills and Administration of Estates in Florida, the definition of undue influence:
Influence to be undue, so as to invalidate a will, must amount to fear, overpersuasion, force or coercion to the extent of destroying the free agency and will power of the testator and must be operative *1335 on the mind of the testator at the time the will is executed.

Id.

The supreme court also quoted with approval from Howard v. Farr, 115 Minn. 86, 131 N.W. 1071, where it was said:
To constitute ‘undue influence,’ the mind must be so controlled or affected by persuasion or pressure, artful or fraudulent contrivances, or by the insidious influence of persons in close confidential relations with him, that he is not left to act intelligently, understandingly, and voluntarily, but subject to the will or purposes of another.

Id.

The Beatty court took judicial cognizance of the fact known generally that when a married man, past middle age, becomes enamored of a young woman who occupies a position of trust and confidence in his business affairs, it is almost universally true that the wish of the mistress becomes the law of the lover. 186 So. at 544. The language of active procurement is not found in Beatty; appellant apparently borrowed this phrase from cases concerning wills which were decided after Beatty.[3]
Several cases have cited Beatty; however, none have utilized the two-part test put forth by the appellant. In Benner v. Pedersen, 143 So.2d 722 (Fla. 2d DCA 1962), an insurance company filed an inter-pleader suit for the purpose of determining the beneficiary of two life insurance policies. Elizabeth Pedersen, the wife of the insured at the time of his death, had been the originally designated beneficiary. However, the insured had begun an amorous relationship with one Joy Benner, who was the named beneficiary at the time of the insured’s death. Although a divorce proceeding filed by Pedersen was pending when the insured died, the insured had endeavored to rename his wife as beneficiary three months after naming Benner as the beneficiary. The trial court held that the wife was the true beneficiary. This holding was premised on findings among other things, that the insured, though physically weak, was in possession of his faculties when he sought the beneficiary change from Benner back to his wife. Further, the trial court found that while there was no direct evidence of undue influence on the part of Benner, there was sufficient evidence of a meretricious relationship between Benner and the insured; and the trial court concluded that a presumption of fact that there was undue influence had arisen, requiring proof by Benner that the change of beneficiary was not “superin-duced by undue influence.” Id. at 724. Beatty v. Strickland, supra, was the cited authority.
The reviewing court agreed that under Florida law, the change of beneficiary to Benner was presumptively the result of undue influence. Benner, 143 So.2d at 724. Moreover, the reviewing court held that Benner was obliged to dispel the presumption with “positive evidence of good faith and fair dealing.” Id. at 726. The Benner court next considered whether Benner had dispelled the presumption. After reciting the trial testimony which indicated that the insured did have an extramarital affair with Benner, and after noting the factual similarities between its case and Beatty, the Benner court affirmed the trial court because Benner failed to satisfy her burden of rebutting the presumption.
In Hill v. Hill, 222 So.2d 454 (Fla. 2d DCA 1969), the insured left his lawful wife and took up residence with another woman, who was held out to be the insured’s lawful wife. Following the insured’s death, the lawful wife challenged the designation of the putative wife as beneficiary of her deceased husband’s life insurance policy. The Hill court found neither Beatty nor Benner controlling, as Hill involved an initial designation, rather than removal of a lawful wife from the policy in favor of another. Accordingly, the Hill court *1336 framed the issue before it as whether the bare presumption of undue influence because the insured was not legally married to his named beneficiary — requiring the putative wife to prove the absence of undue influence — should overcome the routine act of designating a beneficiary of a group life insurance policy offered by the insured’s employer. The Hill court held that the trial court had properly determined that under these facts, the routine designation was to be enforced.
Finally, in Bernal v. Roncallo, 269 So.2d 766 (Fla. 3d DCA 1972), cert. denied, 274 So.2d 239 (Fla.1973) Fanny Bernal was involved in a meretricious relationship with Rafael Roncallo, a married man. Roncallo purchased property, the title to which was placed in his and Bernal’s name, jointly, with the right of survivorship. Roncallo died, and his son, as administrator of the estate, filed suit against Bernal to recover the property. The trial court ruled that Bernal’s interest in the property was the result of undue influence. The reviewing court affirmed on the authority of Beatty v. Strickland, and Benner v. Pedersen. In disposing of Bernal’s arguments on appeal, the district court held that she had. not sufficiently rebutted the presumption of undue influence. The trial court, as noted by the district court, had found the presumption of undue influence had been rebutted, but nevertheless ruled in favor of the administrator on the ground that the greater weight of the evidence did show an undue influence had been exercised by Ber-nal. Thus, the district court differed with the trial court only with respect to the rebuttal issue, holding that evidence that the decedent appeared in full possession of his faculties, knew what he was doing, and desired to take title in the manner in which it was done, “did not show or tend to show that the decedent’s demonstrated resolve to take title in that form was not unduly influenced.” Bernal, 269 So.2d at 767.
Appellant does not attempt to distinguish this case from Benner v. Pedersen. We disagree with appellant that case law rendered subsequent to Beatty regarding undue influence in the execution of wills should alter the result in this case. Courts applying Beatty have not sought to modify that case’s holding by reference to subsequent development in the law of wills, and we likewise are disinclined to do so.
More to the point, the will cases cited by appellant do not involve the exercise of undue influence by a paramour to the detriment of a spouse. For example, the court held in In re Estate of Joiner v. Oliver, 156 So.2d 161 (Fla.1963), that a confidential relationship, such as guardianship, unless accompanied by the element of active procurement, will not involve the presumption of undue influence in the execution of a will. Likewise, in Allen v. Gore, 387 So.2d 535 (Fla. 4th DCA 1980), the son of a decedent challenged his mother’s will which left the entire estate to friends to the exclusion of the decedent’s children and grandchildren. The reviewing court affirmed the admission of the will for probate, stating that the mere existence of a confidential relationship between decedent and beneficiary does not raise a presumption of undue influence unless accompanied by the element of active procurement, citing In re Estate of Joiner, supra, and In re Estate of Carpenter, 253 So.2d 697 (Fla.1971).
Appellant also cites Sturm v. Gibson, 185 So.2d 732 (Fla. 2d DCA 1966), in which an acquaintance of the deceased challenged the will which left the decedent’s ranch to another. The beneficiary was a former foreman who lived on the ranch. The challenge to the devise was premised on a confidential relationship shared by the deceased and foreman. The will was nevertheless probated, and the reviewing court affirmed as there was no record evidence of active procurement of the devise so as to raise the presumption of undue influence.
The fact that none of the above cases involved the exclusion of a spouse in favor of a paramour is not insignificant. The basic premise of Beatty was, after all, that a paramour exercises an “insidious influence” over the object of his or her affection. 186 So. at 544.
It is important to emphasize that the presumption of undue influence is not irrebuttable. Compare Parks v. Travelers *1337 Insurance Company, 160 So.2d 724 (Fla. 3d DCA 1964) (dissenting opinion). Because the presumption is rebuttable, appellant’s argument that application of the presumption impairs contracts is without merit. Upon review of the facts, we conclude that the trial judge did not err in ruling that the appellant failed to rebut the presumption and finding of undue influence. The appellant was admittedly engaged in a sexual affair with the insured. The change in beneficiary designation occurred after the insured suffered a life-threatening heart attack, the prognosis for which was very poor; and appellant accompanied the insured to a research hospital in Philadelphia shortly before the beneficiary designation was changed. Further, while appellant claimed not to be familiar with the deceased’s finances, the record shows that appellant completed the deceased’s State of Florida Retirement Benefit Computation form and used the deceased’s credit card, and that the deceased gave her cash and paid many of her bills. It should also be noted that the change in beneficiary designation from the wife to the appellant was witnessed by a long time friend of the appellant. The appellant has not directed our attention to any record evidence sufficient, in our opinion, to rebut the presumption and finding of undue influence, and we thus find no error in the trial court’s ultimate ruling on this issue.
Although the Florida view on the presumption of undue influence, as represented by the holdings in Beatty and Benner, has been criticized as contrary to the “overwhelming weight of authority,”[4] we note that none of the cases cited by appellant as support for her position involved a change of beneficiary from a lawful spouse to a paramour on a life insurance policy which was paid with funds from the joint checking account of the insured and his spouse.[5] Clearly, had this case involved the designation of the appellant initially, without more, the analysis would be different. See, Hill v. Hill, supra. While we are persuaded that our holding is dictated by precedent, we observe also that the rule of law employed in this case is consistent with other provisions of Florida law which recognize the obligation one has towards his or her family. For example, Art. X, § 4 of the Florida Constitution provides that a homestead shall not be devised if the owner is survived by a spouse and minor children, except that the homestead may be devised to a surviving spouse if there are no minor children. Further, a surviving spouse in Florida has the right under § 732.201, Florida Statutes (1989) to take an elective share of a decedent’s estate, which may include property specifically devised to others.
Arguments raised by appellant in addition to those discussed above are found to be without merit. The order directing the payment of the interpled fund to appellee is
AFFIRMED.
ERVIN and WENTWORTH, JJ., concur.

. The final order reads in pertinent part: "... the Court finds that Claudette Taylor, because of the relationship between she and Col. Johnson, is presumed and found to have been an undue influence, thus, causing the Colonel to change the beneficiary of the family life insurance policy from his wife to Ms. Taylor. This Court is not passing judgment on Ms. Taylor, but under the law and facts of this case, she will not be allowed to profit from the relationship."

. It would appear obvious that the cases discussed apply regardless of whether the insured is a man or woman. It just happens that the case law involves situations where the insured is a man who has replaced his wife as primary beneficiary of a life insurance policy in favor of a mistress.

. Appellant cites as authority for the requirement of active procurement: In re Estate of Joiner v. Oliver, 156 So.2d 161 (Fla.1963), Allen v. Gore, 387 So.2d 535 (Fla. 4th DCA 1980), Sturm v. Gibson, 185 So.2d 732 (Fla. 2d DCA 1966), In re Estate of Robertson v. Gallagher, 372 So.2d 1138 (Fla. 3d DCA 1979), and In re Estate of Carpenter v. Carpenter, 253 So.2d 697 (Fla.1971).

. See, J.A. Appleman and J. Appleman, Insurance Law and Practice, § 1025 (1966).

. Appellant cites: General American Life Insurance Co. v. Sutch, 31 F.Supp. 192 (W.D.Pa.1939), Rudell v. Board of Administration, 58 P.2d 953 (Cal. 1st Dist.Ct.App.1936), McDonald v. Conservative Life, 290 N.W. 372 (Mich.1940), Aetna Life Insurance Co. v. Messier, 173 F.Supp. 90 (M.D.Pa.1959), Strachan v. Prudential Insurance Co. of America, 321 Mass. 507, 73 N.E.2d 840 (1947), Service Life Insurance Company of Ft. Worth, v. Davis, 466 S.W.2d 190 (Mo.Ct.App.1971), and In re Estate of Adams, 447 Pa. 177, 288 A.2d 514 (1972).